IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

THE SANTERIA SANCTUARY,
and TABITHA DOYLE,

    Plaintiffs,

v.                                                                  No. 1:21-cv-01091-JDB-jay

MADISON COUNTY, TENNESSEE,
and T.J. KING, in his individual capacity
as a Deputy Sheriff with the Madison
County Sheriff's Department,

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO STAY

Before the Court is the motion of Defendants, Madison County, Tennessee, and T.J. King, to dismiss, or in the alternative, to stay this case pursuant to Rule 12 of the Federal Rules of Civil Procedure. (Docket Entry ("D.E.") 16.) For the reasons herein, Defendants' motion to stay is GRANTED.

### I.  Background

According to the pleadings, Plaintiff, Tabitha Doyle is an ordained priestess of the Santeria religion and has served in that capacity since 1999, when the co-Plaintiff, Santeria Sanctuary was established at its present location at 179 Sanderson Road, Mercer, Tennessee, a seven-acre tract of land. (D.E. 1 at PageID 2-4.) On or about June 20, 2020, King and other Madison County Sheriff's Department officers entered the property. (D.E. 1 at PageID 5.) Based upon their findings on the property, the officers arrested Doyle and seized over $18,000 in cash and all of the animals on the property. (D.E. 1 at PageID 5-6.)

Doyle was ultimately indicted on 676 counts of cruelty to animals in violation of Tenn. Code Ann. § 39-14-202 and on one count of tampering with or fabricating evidence. (*See* D.E. 16-2.)[1] The criminal matter is currently pending in the Circuit Court of Madison County, Tennessee. (*See* D.E. 16-2 and 16-3).

Doyle and the Sanctuary initiated this action against Defendants pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 2000cc(a)(1), titled the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and Tenn. Code Ann. § 4-1-407, known as the Tennessee Religious Freedom and Restoration Act ("TRFRA"). (D.E. 1 at PageID 1-2.) They assert that the subject property is a house of worship and that Doyle is a priestess at the Sanctuary. (D.E. 1 at ¶¶ 4, 5.)

Plaintiffs' claims center on Defendants destruction of the Sanctuary and their forced entry into the house of worship during a religious ceremony, along with their seizure of tithes and offerings in violation of the Plaintiffs' First Amendment right to free exercise of religion. (D.E. 18 at PageID 740.) In addition, Plaintiffs contend the County officers raid on the property, as well as an unlawful search and seizure of money and animals, violates Plaintiffs' Fourth Amendment rights. (D.E. 1 at PageID 14-15.) Plaintiffs further maintain that such actions by Defendants imposed substantial burdens on the Plaintiffs by forcing them and the adherents of the Sanctuary to forego the practice of their religious precepts—namely, the sacrifice of live animals—in violation of the First Amendment, the RLUIPA, and the TRFRA. (D.E. 1 at PageID 10-11.) Plaintiffs demand monetary damages, as well as a preliminary injunction. (D.E. 1 at PageID 15-16).

---

[1] The Court may take judicial notice of Exhibits A and Exhibit B to Defendants' motion, (D.E. 16-2 and 16-3), without converting it into one for summary judgment. *See Scarso v. Cuyahoga Cty. Dep't of Hum. Servs.*, 917 F.2d 1305, 1305 (6th Cir. 1990) ("In determining the legal efficacy of plaintiff's complaint, the lower court properly took judicial notice of facts in the public record, specifically the records of state court proceedings.") (citations omitted).

In their motion to dismiss or to stay, Defendants aver that in accordance with *Younger v. Harris*, the Court should abstain from exercising jurisdiction as the matters asserted in the case are currently being litigated in state criminal court. (D.E. 16 at PageID 51) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). In their response, the Plaintiffs first argue that *Younger* permits, but does not require, abstention even if a court finds that it is applicable. (D.E. 18 at PageID 745.) Next, they contend that two exceptions to the *Younger* doctrine apply, and as such, the Court should deny Defendants' motion. (D.E. 18 at PageID 747-49.) Finally, Plaintiffs assert that when a court does find that abstention is proper under *Younger*, the proper procedure is for the Court to stay the proceedings, rather than dismiss the case. (D.E. 18 at PageID 745.) Defendants respond that none of these exceptions apply. (D.E. 20 at PageID 759-60.)

## II.   Standard of Review

In considering the efficacy of a complaint in the context of a motion to dismiss, modern federal pleading standards require the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint will survive a motion to dismiss if the plaintiff alleges facts that "state a claim to relief that is plausible on its face" and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A complaint must therefore "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable theory." *Edison v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In assessing the sufficiency and plausibility of a claim, courts "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012) (quoting *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 452 (6th Cir.2003)).

### III. Analysis

"Abstention is a judicially created doctrine that precludes federal courts from deciding some matters before them, even though other jurisdictional and justiciability requirements are met." *O'Brien v. Herold*, No. 2:20-CV-02406, 2021 WL 364255, at *4 (S.D. Ohio Feb. 3, 2021).

Here, Defendants assert that the Court should dismiss this case because of the pending state criminal action. (D.E. 16-1 at PageID 55-58.) The Sixth Circuit has explained *Younger* abstention as follows:

> *Younger* abstention requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings. We look to three factors to determine whether a court should abstain from hearing a case under the *Younger* doctrine: (1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges.

*O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (internal citations omitted).

Upon initial examination, this case appears to fit squarely within the limitations of a "typical *Younger* case" in which Doyle, a federal plaintiff, is the defendant in an ongoing state court proceeding and is using the same factual basis to support her claim in the federal case, as well as in her defense in the state court matter. *See Jordan v. Union Twp. Bd. of Trustees*, No. 1:18-CV-53, 2019 WL 5576499, at *3 (S.D. Ohio Oct. 29, 2019) (concluding that because the plaintiff in the federal case was the defendant in a state court proceedings and was using the same set of facts to support her claim in federal court as well as her defense in state court, the

federal case was a "typical *Younger* case"). The Court will proceed to examine each factor of the *Younger* abstention test.

### A. Whether *Younger* Abstention Applies

First, as previously noted, Doyle's criminal charges of cruelty to animals is pending in the Circuit Court of Madison County, Tennessee. (*See* D.E. 16-2 and 16-3.)[2] The animals in question are the same as were found on the property on the June 20th arrest and are the same as the Plaintiffs claim are part of their religious beliefs and practices. (*See* D.E. 1, 16-2 and 16-3.)

Second, the criminal state action concerns matters which implicate important state interests.[3] Madison County seeks to enforce Tennessee laws against animal cruelty and tampering with or fabricating evidence while Doyle insists that she is pursuing her constitutionally protected right to practice her religion. (*See* D.E. 1 and 16-2.) Thus, any decision by the Court concerning these issues could impact the state prosecution of Plaintiffs. *See generally O'Neill*, 511 F.3d at 643.

Third, Doyle's pending criminal matter will afford Plaintiffs an adequate opportunity to raise constitutional claims as part of their defense.[4] *See e.g., State v. Christensen*, 517 S.W.3d 60 (Tenn. 2017); *State v. Rivera*, No. E2019-01807-CCA-R3-CD, 2020 Tenn. Crim. App. LEXIS 481 (Crim. App. July 15, 2020); *State v. Sherrill*, No. W2019-00150-CCA-R3-CD, 2020 Tenn. Crim. App. LEXIS 150 (Crim. App. Feb. 27, 2020).

The Court finds that the abstention doctrine is applicable. The Court will next address whether any exception to this principle warrants consideration.

### B. Exceptions to *Younger* Abstention Doctrine

---

[2] Plaintiffs do not dispute that the state court matter is currently ongoing. (*See* D.E. 18.)
[3] Plaintiffs do not directly address whether the state action implicates important state interests. (*See* D.E. 18.)
[4] Plaintiffs do not directly address whether there is an adequate opportunity in the state proceedings to raise constitutional challenges. (*See* D.E. 18.)

The Supreme Court has recognized exceptions to *Younger* in three circumstances: (1) where the state proceeding is motivated by a desire to harass or is conducted in bad faith; (2) where a challenged statute is flagrantly and patently violative of express constitutional prohibitions; and (3) where there is an extraordinarily pressing need for immediate federal equitable relief. *Kugler v. Helfant*, 421 U.S. 117, 125 (1975); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975) (internal quotation marks omitted);  However, such exceptions have generally been interpreted narrowly. *See Gorenc v. City of Westland*, 72 F. App'x 336, 339 (6th Cir. 2003).

Plaintiffs contend that both the bad faith and extraordinary need exceptions apply here. The Court addresses each argument below.

The Supreme Court has only applied the "bad faith" exception to one set of circumstances: "where state officials initiate[d] repeated prosecutions to harass an individual or deter his conduct, and where the officials ha[d] no intention of following through on these prosecutions." *Herold*, 2021 WL 364255, at *6 (quoting *Ken-N.K., Inc. v. Vernon Twp.*, 18 F. App'x 319, 324−25 n.2 (6th Cir. 2001). Likewise, "no Sixth Circuit case . . . has ever authorized federal intervention under the bad faith or harassment exception." *Kalniz v. Ohio State Dental Bd.*, 699 F. Supp. 2d 966, 973 (S.D. Ohio 2010).

Courts limit findings of bad faith to extreme facts, such as when city police officers "repeatedly engaged in searches and seizures they knew to be unlawful," or when a county prosecutor office "filed twelve separate actions . . . in order to harass the plaintiffs and drain them of all their financial resources." *Id*. at 973−74 (citing *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82 (5th Cir. 1992) and *Video Store, Inc. v. Holcomb*, 729 F. Supp. 579, 580 (S.D. Ohio 1990)). Thus,  it is evident that "the standard for evaluating claims of bad faith and bias is

6

difficult to meet." *Berger v. Cuyahoga Cty. Bar Ass'n*, 775 F. Supp. 1096, 1100 (N.D. Ohio 1991), *aff'd*, 983 F.2d 718 (6th Cir. 1993).

Nonetheless, Plaintiffs insist that the bad faith exception applies. (D.E. 18 at PageID 747-48.) The Sanctuary and Doyle aver that they, and the congregants of the Santeria Sanctuary, have been the victims of death threats and hate speech by some of the local residents of Madison County. (D.E. 18 at PageID 747.) They allege that Defendants used one of the local antagonists, Kayla Collins, who has publicly stated her ill will toward the Plaintiffs, to illegally obtain information, by trespassing and surreptitiously conducting hidden surveillance of the Plaintiffs' land and residence. (D.E. 18 at PageID 747-48.) Plaintiffs also state, that "the Sheriff of Madison County, John Mehr[,] invited local politicians to come to the Plaintiffs' property to witness first-hand the destruction and damage caused by the county Sheriff's Department to [t]he Santeria Sanctuary" and that this is "further evidence of a 'desire to harass'" and "a transparent effort to appease local opposition to the Plaintiffs' religious exercise." (D.E. 18 at PageID 747−48.)

None of the allegations, however, even if assumed to be true, rises to the level of bad faith or harassment required for an exception to *Younger* abstention. *See Tindall v. Wayne Cty. Friend of the Court*, 269 F.3d 533, 539 (6th Cir. 2001) (explaining that cases that fall under the bad faith exception are "exceedingly rare"). Moreover, the Court does not find, nor do the Plaintiffs explain, how local politicians coming to the property shows a "desire to harass." Plaintiffs make this bald allegation without providing any connection between the two. (*See* D.E. 18 at PageID 747−48.) Additionally, even if the claims of threats and hate speech rose to the level of bad faith and/or harassment, those actions did not emanate from Defendants.

As for the allegations involving Collins, the Court reiterates the level of difficulty it takes for an action to constitute "bad faith." *See Berger*, 775 F. Supp. at 1100. A decision from the Fifth

7

Circuit, *Nobby Lobby, Inc. v. City of Dallas*, involving allegations of improper raids, searches, and seizures illustrates this point. 970 F.2d 82 (5th Cir. 1992) In that case, police raided, searched, and seized the property of a business numerous times over the course of several years. *Id.* at 84. The appellate court affirmed the district court's decision that the bad faith exception applied. *Id*. at 84. In addition to the number of times the police took such action, the Fifth Circuit also weighed the significant extent of the property seized and the fact that due to those seizures, a significant part of the plaintiff's business could no longer be conducted. *Id*. at 87-88. The appellate court also gave considerable weight to the fact that the police repeatedly engaged in the searches and seizures even though "they must have been aware of the strong possibility that the seizures were unconstitutional." *Id*. Here, Plaintiffs' allegations fall short of rising to similar conduct as Defendants' actions occurred once and the seizure involved alleged criminal activity. (*See* D.E. 1 and 18.) Finally, the record does not reflect, nor do the Plaintiffs allege, that Defendants believed that their conduct was illegal. (*See* D.E. 1 and 18.)

   For these reasons, the Court declines to apply the bad faith exception here.

   Without citing any legal support, the Sanctuary and Doyle contend that the "extraordinarily pressing need" exception also applies. (*See* D.E. 18 at PageID 748-49.) According to Plaintiffs, since the events on June 20, 2020, "the church has been prevented from restoring its worship activities or engaging in religious ceremonies for fear of criminal prosecution and reprisal from government officials." (D.E. 18 at PageID 749.) Moreover, Plaintiffs claim that the Sanctuary "has been effectively shut down" and its members are without a place to worship. (D.E. 18 at PageID 748-49.)

For this exception to apply, a plaintiff must describe a situation that presents "extraordinary circumstances." *Kugler*, 421 U.S. at 124−25. In *Kugler*, the Supreme Court provided an extensive explanation of those circumstances:

> Only if "extraordinary circumstances" render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state criminal process. The very nature of "extraordinary circumstances," of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state criminal proceedings. But whatever else is required, such circumstances must be "extraordinary" in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation.

*Id.*

Here, Plaintiffs do not address whether the parallel state court proceedings are an inadequate forum to raise their constitutional claims/defenses. (*See* D.E. 18.) Thus, the claimants have not shown that the Circuit Court of Madison County is an inferior tribunal when defendants in Tennessee are afforded the opportunity to assert constitutional defenses within their criminal proceedings. *See e.g., Christensen*, 517 S.W.3d at 60; *Rivera*, 2020 Tenn. Crim. App. LEXIS at 481.

Given these facts, the Court finds that the Plaintiffs have not shown that their injury is of such a nature as to necessitate this court's involvement.

### C. Abstention Procedure

Since abstention is appropriate and no exceptions apply, all that remains is to decide whether Plaintiffs' claims in this action should be dismissed or stayed. To reach that decision, the Sixth Circuit has instructed that a district court should examine the type of relief sought by the plaintiff:

9

> [T]he United States Supreme Court has held that under our precedents, federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary. Whether the plaintiffs seek a legal versus an equitable remedy controls how the district court disposes of the case after holding that the *Younger* doctrine applies to it. If the plaintiffs seek equitable relief, such as an injunction, then the district court may exercise its discretion and decide whether to dismiss the case, and we would then review its decision for abuse of discretion. But where, as here, the plaintiffs seek purely legal relief, in the form of damages, *Quackenbush* prevents the district court from even exercising its discretion and deciding to dismiss the case.

*Nimer v. Litchfield Twp. Bd. of Trustees*, 707 F.3d 699, 702 (6th Cir. 2013) (internal citations and quotation marks omitted).

In this action, Plaintiffs seek both equitable relief, in the form of a preliminary injunction, and legal relief, in the form of damages. (D.E. 1 at PageID 16-17.) When a plaintiff seeks both types of relief, courts in this circuit have stayed the case rather than treat each form of requested relief differently. *See, e.g.*, *Herold*, 2021 WL 364255, at *7-8 (staying case when the plaintiff sought both equitable and legal relief); *Schwab v. Kent Cty*. Parole Dir., No. 1:20-CV-669, 2020 WL 5087881, at *4 (W.D. Mich. Aug. 28, 2020) (same); *Jordan*, 2019 WL 5576499, at *5. Moreover, the Sixth Circuit has stated that "the appropriate procedure, when abstaining under *Younger*, is to stay the proceedings rather than to dismiss the case without prejudice." *See Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir.1995) ("Issuing a stay avoids the costs of refiling, allows the plaintiffs to retain their place on the court docket, and avoids placing plaintiffs in a sometimes difficult position of refiling their case before the statute of limitations expires."). For these reasons, the Court stays this case pending resolution of the state action.

### IV.   CONCLUSION

Accordingly, Defendants' Motion is **GRANTED**. The federal case is **STAYED** during the pendency of the state court proceedings. The parties are directed to jointly file a status report within 30 days of the conclusion of the state action. The report must apprise the Court whether

any issues remain for adjudication here or whether dismissal is appropriate. The parties also should attach a copy of the final judgment and any dispositive orders from the state action as exhibits to the report.

    IT IS SO ORDERED this 2nd day of December 2021.

s/ J. DANIEL BREEN<br>
UNITED STATES DISTRICT JUDGE